**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                                                        No. CR 20-2040 RB

IGNACIO CHAVEZ,

      Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

      **BEFORE THE COURT** is Mr. Chavez's Amended Motion to Reduce Sentence, in which Mr. Chavez argues his 168-month sentence should be reduced to 135 months under Amendment 821 to the United States Sentencing Guidelines. (Doc. 486.) *See* U.S. SENT'G GUIDELINES MANUAL § 4A1.1(e) (U.S. SENT'G COMM'N 2023) (USSG). The United States filed a response opposing the reduction. (Doc. 488.) Mr. Chavez did not file a reply. Having reviewed the parties' arguments, the record, and the applicable law, the Court finds it lacks jurisdiction over the Motion because Mr. Chavez is not eligible for a reduction. The Motion is, therefore, **DISMISSED.**

## I.    BACKGROUND

      On November 12, 2020, a 61-count Indictment was filed in United States District Court, District of New Mexico, charging Mr. Chavez with one count of conspiracy to distribute 50 grams and more of methamphetamine; one count of distribution of 50 grams or more of methamphetamine and aiding and abetting; and two counts of use of a communication facility to further the commission of a drug trafficking crime. (Doc. 398 at 4.) *See* 21 U.S.C. §§ 846; 841(a)(1), (b)(1)(A); 843(b), (d)(1); 18 U.S.C. § 2. The offenses occurred between approximately November 19, 2019, to approximately August 11, 2020, in Chaves County, New Mexico. (Doc. 398 at 4.)

The United States and Mr. Chavez entered into a Rule 11(c)(1)(C)-type Plea Agreement, in which Mr. Chavez admitted that, "[a]t the time of [his] arrest in this case, [he] had approximately a pound of methamphetamine, four firearms, and $3,205 in cash in [his] residence" and that he "lived in and operated the residence [that was] frequently used to store the methamphetamine prior to its distribution." (Doc. 337 at 5.) He further agreed that "the Court may rely on any of these facts, as well as facts in the presentence report, to determine [his] sentence, including, but not limited to, the advisory guideline offense level." (*Id*.) Mr. Chavez agreed to plead guilty to the charges, to forfeit his right, title, and interest in the four firearms, ammunition, and $3,205. (*Id*. at 6–7.) The parties agreed that a "total sentence of 168 months of incarceration is the appropriate sentence in this case." (*Id*. at 6.) The United States agreed not to bring any additional criminal charges against Mr. Chavez arising from the facts "forming the basis of the present Indictment." (*Id*. at 9.)

Before sentencing, the United States Probation Office (USPO) prepared a Presentence Report. (Doc. 398.) In the PSR, the USPO stated that Mr. Chavez's residence was being "utilized as a stash house" and that when Mr. Chavez was arrested, he had "a bag containing 2.199 net grams of methamphetamine (actual) [in] his left front pant pocket." (*Id*. at 5–6.) During a search of his home, officers found a Savage Arms Westfield 12 gauge, a Remington 807 12 gauge, an American Tactical AR-15 .223, and a PW Arms 9mm, as well as ammunition, a bag containing 212.2 net grams of methamphetamine, nine bags containing a total of 61.8 net grams of methamphetamine, and a digital scale. (*Id*. at 6.) Mr. Chavez did not object to the facts in the PSR. *See United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) ("At sentencing, the district court may rely on facts stated in the presentence report unless the defendant has objected to them." (quotation omitted)).

The USPO also found that Mr. Chavez's base offense level was 34[1] and, after a two-level increase because "a dangerous weapon (including a firearm) was possessed," § 2D1.1(b)(1), a two-level increase for maintaining a premises for the purpose of distributing a controlled substance, and a three-level downward adjustment for acceptance of responsibility, his total offense level was 35. (*Id.* at 7–8.) The USPO found that Mr. Chavez had zero criminal history points and his criminal history category was therefore I. (*Id.* at 10.) An offense level of 35 and criminal history category of I equated to a Guidelines range of 168 to 210 months. (*Id.* at 13.) *See* USSG Chap. 5, Part A. It further noted that, had Mr. Chavez been "convicted at trial, his offense level would have been 38, absent any adjustments. An offense level of 38 combined with a criminal history category of I results in a guidelines imprisonment range of 235 months to 293 months." (Doc. 337 at 12–13.) The USPO noted that the statutory minimum term of imprisonment for Counts 1 and 17 was 120 months, and the maximum term of imprisonment for Counts 24 and 33 was 48 months. (*Id.* at 13.)

In August 2019, the Court adopted the PSR and sentenced Mr. Chavez to 168 months incarceration for Counts 1 and 17, and 48 months for Counts 24 and 33, all terms to run concurrently. (Doc. 451; Statement of Reasons, § 1.) In its Statement of Reasons, the Court noted that the sentence was a departure from the Guidelines range of 168 to 210 months due to the binding Plea Agreement. (Statement of Reasons, §§ IV–V.)

Since Mr. Chavez was sentenced, Congress amended the Sentencing Guidelines (Amendment 821) to modify the way "status points" are assessed for certain offenses (Part A) and the offense levels are calculated for defendants with no criminal history points (Part B). *Compare* § 4A1.1(d)(pre-amendment) *with* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254-01, 2023 WL 3199918 (May 3, 2023) *and* §§ 4A1.1(e), 4C1.1. Amendment 821 applies

---

[1] The USPO used the 2021 Guidelines Manual to determine Mr. Chavez's offense level and criminal history category. (Doc. 398 at 7.)

retroactively. *See* § 1B1.10(a)(1), (d). Mr. Chavez now asks the Court to reduce his sentence to 135 months under Part B of Amendment 821. (Doc. 486.)

## II.   LEGAL STANDARDS

### A.   Sentence Modifications under 18 U.S.C. § 3582

A district court may modify a sentence "only pursuant to statutory authorization." *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997). Section 3582(c)(2) provides that authorization for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see also* § 1B1.10(a)(1). Section 3582 "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Sentence reductions fall "within the district court's discretion." *United States v. Osborn*, 679 F.3d 1193, 1196 (10th Cir. 2012) (quoting *United States v. Dorrough,* 84 F.3d 1309, 1311 (10th Cir. 1996)). However, the Sentencing Guidelines require that "any such reduction in the defendant's term of imprisonment shall be consistent with" the USSG policy statements. § 1B1.10(a)(1). Those policy statements require courts proceeding under § 3582(c)(2) to substitute the amended Guidelines range for the range applicable when the defendant was sentenced and to "leave all other guidelines application decisions unaffected." § 1B1.10(b)(1). "Under § 3582(c)(2), a court may then grant a reduction within the amended Guidelines range if it determines that one is warranted 'after considering the [applicable] factors set forth in'" § 3553(a). *Dillon*, 560 U.S. at 822 (quoting § 3582(c)(2)). "Except in limited circumstances, however," a court may not reduce a sentence "to a term that is less than the minimum of the amended" Guidelines range. *Id.* (quoting § 1B1.10(b)(1)).

Under § 3553, courts must consider, as applicable, "the nature and circumstances of the offense and the history and characteristics of the defendant;" and whether the sentence imposed "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense," "afford[s] adequate deterrence to criminal conduct," and "protect[s] the public from further crimes of the defendant . . . ." § 3553(a)(1), (2)(A)–(C). In addition, courts consider the sentencing range under the Guidelines and the Sentencing Guidelines' policy statements. § 3553(a)(4), (5). Finally, courts consider the "kinds of sentences available, . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . and the need to provide restitution to any victims of the offense." § 3553(a)(3), (6), (7). "[A]n ameliorative amendment to the Guidelines in no way creates a *right* to sentence reduction." *Osborn*, 679 F.3d at 1196.

### B.  Amendment 821

Part B of Amendment 821 added a new section to the USSG providing that courts may reduce the offense levels by two for offenders who have zero criminal history points (zero-point offenders) and meet specified additional criteria. § 4C1.1(a); U.S. SENT'G GUIDELINES MANUAL app. C Supp.(U.S. SENT'G COMM'N 2023). Defendants who do not meet those criteria are not eligible for a reduction and the Court "lacks jurisdiction over the defendant's motion," which "must be dismissed." *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017); § 1B1.10(a)(1); *see also United States v. Munoz*, 682 F. App'x 635, 636 (10th Cir. 2017) (same); *United States v. Warren*, 22 F.4th 917, 926 n.6 (10th Cir. 2022) (noting that, while eligibility for a sentence reduction under § 3582 is a jurisdictional question under Tenth Circuit precedent, that precedent may "need to be revisited").

One of the nine criteria for Part B relief requires that the defendant did not "possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense . . . ." § 4C1.1(a)(7) (the Firearm Exception). Because this language tracks the safety valve provisions based on firearm possession in §§ 3553(f) and 5C1.2(a)(2), and because Part B and its "exclusionary criteria" were "informed by existing legislation, including the congressionally established criteria for" those safety valve provisions, the Court concludes that the Firearm Exception applies the same way the safety valve provisions apply. USSG App. C, amend. 821 (Nov. 2023) (Reason for Amendment); *compare* § 4C1.1(a)(7), *with* §§ 3553(f), *and* 5C1.2(a)(2); *see Citizens for Const. Integrity v. United States*, 70 F.4th 1289, 1308 (10th Cir. 2023) (stating that, when construing statutes, it is elemental that "similar language in similar statutes should be interpreted similarly." (internal quotations and citation omitted)). Although the Tenth Circuit Court of Appeals has not addressed this precise issue, courts in this and other districts are in accord. *See*, *e.g.*, *United States v. Baca-Marquez*, No. 1:23-CR-01167-WJ, 2024 WL 3580660, at *6 (D.N.M. July 30, 2024) (applying the Firearm Exception like the safety valve provisions); *United States v. Salazar*, No. CR-18-006-003-F, 2024 WL 3488081, at *1 (W.D. Okla. July 18, 2024) (stating that the Firearm Exception is based on the safety valve provisions); *United States v. Berry*, No. 5:17-CR-00011, 2024 WL 3503465, at *5 (W.D. Va. July 22, 2024) (stating "it is reasonable to conclude that the Sentencing Commission intended that [the Firearm Exception] be applied in the same manner as § 5C1.1(2)(a)(2)"); *United States v. Garfias*, No. CR 5:19-080-DCR, 2024 WL 457763, at *1 (E.D. Ky. Feb. 6, 2024) (holding that the Firearm Exception did not bar relief where the defendant's offense level was increased under § 2D1.1(b)(1) but also received safety valve relief because he did not actively possess a firearm in connection with the offense); *cf. United States v. Clark*, No.

1:22-CR-00374-KWR-1, 2023 WL 6847539, at *4 (D.N.M. Oct. 17, 2023) (holding that, if Amendment 821 were in effect at that time, the Firearm Exception would likely bar relief because the Court had already denied relief for a reduction under § 5C1.2(a)).

Hence, like a defendant seeking safety valve relief, a "defendant bears the sole burden to establish by a preponderance of the evidence" that the Firearm Exception does not bar a sentence reduction under Part B. *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187 (10th Cir. 2004) (addressing the safety valve standard). Moreover, a finding that a firearm "was possessed"—and the resulting two-level increase in offense level under § 2D1.1(b)(1)—is not dispositive of whether the Firearm Exception applies because the § 2D1.1(b)(1) standard of proof is higher than the Firearm Exception standard. *Id*. "Specifically, for purposes of § 2D1.1(b)(1), once the government has met its initial burden of showing that a weapon 'was possessed,' the defendant must then show that it is clearly improbable that a weapon was not connected to the offense." *Id*. (quoting § 2D1.1(b)(1)). In contrast, to avoid the Firearm Exception, a defendant need only meet the lower preponderance-of-the-evidence standard. *Id.* In other words, "[i]t does not deductively follow from a defendant's failure to satisfy a higher quantum of proof" as to whether a firearm "was possessed" under § 2D1.1(b)(1) "that he cannot satisfy a lower quantum of proof" as to whether he possessed a firearm in connection with the charged offense. *Id*. at 1188 (quoting *United States v. Bolka,* 355 F.3d 909, 914 (6th Cir. 2004)).

In addition, "in evaluating the [Firearm Exception], unlike § 2D1.1(b)(1), we focus on the defendant's 'own conduct' and 'recognize a distinction between constructive and actual possession.'" *United States v. Hargrove*, 911 F.3d 1306, 1329 (10th Cir. 2019) (quoting *Zavalza-Rodriguez*, 379 F.3d at 1186). "[P]ossession in [the Firearm Exception context] is an active possession whereby there is a close connection linking the individual defendant, the weapon and

7

the offense." *Zavalza-Rodriguez*, 379 F.3d at 1187. "[W]hen a defendant 'did not argue that the gun was not actually his nor that it was merely constructively possessed,' 'a gun's proximity and potential to be used in connection with the offense' may well be sufficient to" fall within the Firearm Exception. *Hargrove*, 911 F.3d at 1329 (quoting *Zavalza-Rodriguez*, 379 F.3d at 1186 n.2).

In short, zero-point offenders whose offense level was increased under § 2D1.1(b)(1) are not automatically barred from Part B relief. However, to avoid the Firearm Exception, they must show by a preponderance of the evidence that they did not actually possess a firearm in close connection with the offense. *See Zavalza-Rodriguez*, 379 F.3d at 1188 ("[F]or purposes of [the safety valve provisions] we look to the defendant's own conduct in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed 'in connection with the offense.'" (quoting § 5C1.2(a)(2)).

If the Firearm Exception does not apply and the zero-point offender is otherwise eligible for a sentence reduction, the Court must then consider whether the defendant has shown "a sentence reduction is consistent with the Commission's policy statements" and entitlement to "relief in light of the applicable sentencing factors found in" § 3553(a). *C.D.*, 848 F.3d at 1289–90; *see also* § 1B1.10(a)(1), § 3582(c)(2). The fact that a court considered the § 3553(a) factors in the initial sentencing does not preclude a court from considering them in the context of a sentence reduction motion. *Osborn*, 679 F.3d at 1196. In addition to the § 3553(a) factors, courts may consider "post-sentencing conduct," § 1B1.10, app. n.1(B)(iii), and "the benefits the defendant gained by entering a Type–C [plea] agreement when it decides whether a reduction is appropriate . . . ." *Hughes v. United States*, 584 U.S. 675, 689 (2018); *see also Osborn*, 679 F.3d at 1195.

### III.    DISCUSSION

Mr. Chavez is a zero-point offender and therefore meets the first criteria for relief under Part B. However, the Court finds that he is not eligible for relief because he has not shown by a preponderance of the evidence that he did not possess the firearms found in his house in connection with the offenses to which he pled guilty. Because Mr. Chavez is not eligible for a reduction, the Court lack jurisdiction over his Motion. *C.D.*, 848 F.3d at 1289.

Mr. Chavez acknowledges that he "bears the burden of proving . . . that he "did not possess . . . a firearm . . . in connection with the offense" by a preponderance of the evidence. (Doc. 486 at 5 (quoting the Firearm Exception).)[2] He concedes the firearms were his but argues that there is not a close connection between them and his offenses because he "was not prohibited from having guns[ and] lived at the 'stash house.'" (*Id.*) He asserts, "[i]t is unsurprising he kept his guns at the house [where] he lived. This does not mean he kept the guns for purposes of conspiring to and aiding and abetting in distributing drugs. Thus, he qualifies for the two-level offense reduction for having zero criminal history points." (*Id.*)

These assertions do not meet Mr. Chavez's burden. Whether Mr. Chavez legally owned the firearms is not dispositive. Because Mr. Chavez admitted possession of the firearms, "the requirement of active possession—based on [his] own conduct—may be rounded out and completed by further evidence that the possessed firearm[s were] in close proximity to the offense and had the potential to facilitate it." *Hargrove*, 911 F.3d at 1331. The offenses in question are conspiracy to distribute methamphetamine and aiding and abetting methamphetamine distribution.

---

[2] Mr. Chavez did not request a hearing on his Motion. (Doc. 486.) "[W]hen a defendant disputes facts but fails to request a hearing in a § 3582(c)(2) proceeding, a district court need not hold a hearing." *United States v. Piper*, 839 F.3d 1261, 1270 (10th Cir. 2016); *United States v. Lindsey*, 527 F. App'x 700, 704 (10th Cir. 2013) (hearing was not warranted where the defendant did not request one, § 3582 does not require a hearing, and the district court based its decision on uncontested facts).

(Doc. 398 at 4.) Mr. Chavez admitted that his house was "frequently used to store the methamphetamine prior to its distribution" (Doc. 337 at 5), that officers found the four firearms and ammunition in his bedroom (Doc. 398 at 6), and that he had methamphetamine in his house and in his pocket when they arrested him. (*Id*.) These facts are sufficient to show his firearms had a close connection to the offenses because they were proximal to the stash house and the drugs and had the potential to facilitate distribution of the drugs. *See Hargrove*, 911 F.3d at 1331 ("[I]t is well established that firearms are " 'tools of the trade'—that is, means for the distribution of illegal drugs.'" (quoting *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991)); *see, e.g., United States v. Payton*, 405 F.3d 1168, 1171 (10th Cir. 2005) (finding "strong indications that [the defendant's] actual possession of . . . guns was connected to the conspiracy" to distribute methamphetamine where a "shotgun was hidden under [the defendant's] bed in close proximity to two 8–balls of methamphetamine in her dresser"); *Salazar*, 2024 WL 3488081, at *1–2 (finding a firearm facilitated or had the potential to facilitate a possession of a controlled substance charge where the "firearm was located in the house where defendant was residing, along with methamphetamine and U.S. currency" and finding that therefore the Firearm Exception barred relief under Part B); *United States v. Wheaton*, 517 F.3d 350, 368 (6th Cir. 2008) (stating that a firearm and drugs do not have to be in the same precise location "in order for the gun to be attributable to [the defendant where] the residence itself was associated with the drug conspiracy").

Mr. Chavez's suggestion that he could have had the weapons for reasons other than conspiracy to traffic methamphetamine, without evidence, is insufficient to show by a preponderance of the evidence they were not used in connection with the methamphetamine trafficking occurring from or in his house. *See Berry*, 2024 WL 3503465, at *5 (finding the defendant did not meet his burden where he admitted the guns and drugs found in his house

belonged to him but argued, without evidence, that they were not connected with the offense of conspiracy to traffic heroin). The Court concludes that Mr. Chavez falls within the Firearm Exception. The Court therefore lacks jurisdiction over his Motion. *C.D.*, 848 F.3d at 1289.

## IV.    CONCLUSION

The Court finds Mr. Chavez is not eligible for a sentence reduction under Part B of Amendment 821 because he does not meet the criteria for relief. Therefore, the Court lacks jurisdiction over his Motion.

**IT IS THEREFORE ORDERED** that Mr. Chavez's Motion for Reduction (Doc. 140) is **DISMISSED.**

_____
ROBERT C. BRACK
SENIOR UNITED STATES DISTRICT JUDGE